ISAAC FEINBERG, Executor and Trustee under the Will of Sarah Feinberg,
Plaintiff,

*vs.*

SADIE FEINBERG, ISADOR FEINBERG, PETER FEINBERG, MORRIS FEINBERG, JACOB FEINBERG, LADIES BICHOR CHOLEM, MOSHEV ZEKENIM SOCIETY and HACHNOSES ORCHIM, a corporation of the State of Delaware, NEW CASTLE COUNTY CHAPTER OF THE NATIONAL FOUNDATION FOR INFANTILE PARALYSIS, INC., an unincorporated association and JOSEPH DONALD CRAVEN, Attorney General of the State of Delaware,
Defendants.

*New Castle, May 8, 1957.*

*Thomas Herlihy, Jr.,* Wilmington, for plaintiff.

*Robert B. Walls, Jr.,* Wilmington, for defendants, Sadie Feinberg, Morris Feinberg and Jacob Feinberg.

*Harold Leshem,* Wilmington, for defendant, Isador Feinberg.

*Albert J. Stiftel* and *Wilfred Smith, Jr.,* Wilmington, for defendant, Peter Feinberg.

*Jacob Balick,* Wilmington, for defendants, Ladies Bichor Cholem, Moshev Zekenim Society and Hachnoses Orchim and New Castle County Chapter of the National Foundation for Infantile Paralysis, Inc.

MARVEL, Vice Chancellor: Isaac Feinberg, executor and trustee of the will of Sarah Feinberg, seeks instruction as to how he should carry out certain directions of the will. The original complaint named as parties defendant those adult members of the testatrix's family who are given specific bequests, her other children, her surviving husband and the Ladies Bichor Cholem, Moshev Zekenim Society and Hachnoses Orchim, the one specifically designated and presently operating charitable institution having an interest in moneys bequeathed in a portion of the will which requires construction. By amendment two local institutions which most nearly promote charitable purposes [1]

---

1. The testatrix's specific directions to the executor-trustee in paragraph (b) of Item Seventh are as follows: "* * * pay at least the sum of One Hundred Dollars ($100.00) to an institution of his own choosing which will use this money to send underprivileged children to a summer camp; One Hundred Dollars ($100.00) at least to the Ladies Bichor Cholem Society of Wilmington, Delaware; One Hundred Dollars ($100.00) to the National Refugee

sought to be benefited by the testatrix were added as defendants.[2] The Attorney General of Delaware having been later joined as a party because of the public's interest in the will's purported charitable bequests, the issues raised by the complaint as amended and the answers thereto have been presented for decision on the pleadings, depositions and affidavits of record.[3]

The first question to be decided concerns the nature of the gift made to the testatrix's son, Isador, by Item Third of the will, under the terms of which the sum of $1,500 was bequeathed * * * "absolutely, and forever, to be paid to him as soon as he is married."

It is stipulated that Isador has not married, but no contention is made that the gift is not vested. Not only is there no gift over on his failure to marry within a specified period but the gift is made "absolutely and forever". Furthermore, the event which fixes the time of payment of the gift is not couched in the form of a condition. Accordingly I conclude that the gift is vested, *Vol.* 57 *American Jurisprudence, Wills,* §§ 1218, 1227.

The question remains, however, as to how this fund should be treated pending the son's marriage or death. In view of the testatrix's clearly expressed intention that enjoyment of this relatively small gift should be postponed, the trustee named by the testatrix will be instructed to hold and invest the bequest, to accumulate interest there-

---

Service; One Hundred Dollars ($100.00) to an institution which cares for consumptive patients without pay; One Hundred Dollars ($100.00) to an institution which cares for consumptive patients without pay; One Hundred Dollars ($100.00) for the Infantile Paralysis Fund and One Hundred Dollars ($100.00) to an institution or institutions maintaining aged scholars * * *" The trustee has selected institutions to be benefited by the four bequests which lack specificity.

2. Jewish Federation of Delaware and the New Castle County Chapter of the National Foundation for Infantile Paralysis, Inc.

3. By stipulation it is agreed that the counterclaim of the defendant, Peter Feinberg, is not now before me for decision. The principal assets of the Sarah Feinberg estate consists of real estate, equitable title to which, according to the counterclaim, belongs to Peter Feinberg, surviving husband of the testatrix. Counterclaimant prays that a resulting trust in such property be declared in his favor.

on until such time as Isador marries or dies, and then to pay the bequest and its accumulated income to him or to his estate.

The principal issue in dispute concerns the construction of Item Seventh of the will under the terms of which the testartix placed the residue of her estate in trust and named the executor of her estate as trustee. Paragraph (a) of this Item states a purpose of the trust to be the payment of up to $500 for the benefit of the testatrix's living relatives in Europe and directs that such sum be held available for such relatives "* * * for a period of three years and after that time any unexpended portion * * * is to be distributed as hereinafter provided."

Paragraph (b) of Item Seventh of the will directs that the "* * * balance of the trust estate is to be divided by my executor and trustee so as to pay * * *" sums of One Hundred Dollars ($100.00) or more to each of six charitable uses, only one of which is specifically associated with a clearly named institution presently operating.

The final clause of Item Seventh then goes on to state: "The above directions for the expenditure of my trust estate are not intended to bind my trustee either as to the amount to be given or the *institution* or *individual* to receive the same, but having full faith and confidence in my said executor and trustee, I know that he will apply this money where it will do the most good. My said Trustee is not to be accountable to anyone for the manner in which he disposes the funds or the recipients thereof and I give him sole and absolute discretion in the disbursement thereof."

While the Attorney General has not taken a position as to the public's interest in the charitable aspects of the will, counsel for the Ladies Bichor Cholem, Moshev Zekenim Society and Hachnoses Orchim and the New Castle County Chapter of the National Foundation for Infantile Paralysis, Inc., an institution obviously sought to be aided by the testatrix, contends that the relatively small amount of $500 directed to be distributed under the admittedly private trust provisions of paragraph (a) of Item Seventh should not be taken into account in construing paragraph (b). He points out that more than three years (the time fixed for such payments) have elapsed since the

testatrix's death and that in any event there has not been a fatal commingling of a private and public trust, *Graham v. Bergin,* 18 *Ohio App.* 35, considering that the testatrix apparently intended that the institutions and individuals designated or generally indicated in her will should be the beneficiaries of the bulk of her residuary estate.

In reply, counsel for the widower, Peter Feinberg, contends that the broad and sweeping language of the final paragraph of Item Seventh gives the trustee a free hand in the expenditure of the trust estate "* * * either as to the amount to be given or the *institution* or *individual* to receive the same * * *" and that consequently the entire trust is invalid, although it is conceded that were the object of the testatrix's bounty purely charitable, her intent, though vaguely and poorly expressed would be given effect, *Griffith v. State,* 2 *Del.Ch.* 421 ; *Monaghan v. Joyce,* 12 *Del.Ch.* 28, 103 *A.* 582.

In the case of *Morice v. The Bishop of Durham,* 10 *Ves.Jun.* 521, 32 *Eng.Reprints* 947, Lord Eldon considered the question of the validity of a bequest in trust to the Bishop of Durham "* * * for such objects of benevolence and liberality * * *" as the Bishop in his discretion should most approve. Pointing out that the testatrix had not established a trust for purely charitable purposes and that while the trustee might apply the trust to charitable uses, he was not bound so to do, inasmuch as he could conceivably apply the whole to "* * * purposes benevolent and liberal, and yet not within the meaning of charitable purposes * * *". The Court concluded that while the object of the trust accordingly failed yet there was a clear intent to create a trust and a resulting trust for the benefit of the testatrix's next of kin was declared. The case is authority for the widely accepted principle that a trust which is susceptible to being ad-ministered as a private trust will fail when its beneficiaries cannot be determined within the time fixed by the rule against perpetuities or where the trust terms are so indefinite as to be outside the limits of adequate judicial supervision. Its rule has been followed not only in the courts of England but generally in this country as well, despite critcism that its application defeats testamentary intent, 5 *Harvard Law Review 389.*

Notwithstanding the force of Lord Eldon's decision, courts in this country and in Great Britain have not consistently accepted all of its implications inasmuch as so-called trusts for the erection of tombstones and the like as well as those for the care of pets have been sanctioned by judicial decree notwithstanding the absence of a trust beneficiary in the true sense. Furthermore, in the comparatively recent English case of *In re Thompson* [1934] *Chancery Division* 342, a legacy to a named friend to be applied by him in such manner as he should in his absolute discretion think fit towards the promotion and furthering of fox-hunting (an admittedly non-charitable cause) was upheld subject to later objection by the residuary legatees should the gift not be applied as directed. While *Morice v. Bishop of Durham* was cited in opposition to approval of the bequest, *In re Thompson* in effect not only supports the proposition that the beneficiary of a private trust need not be a person but more importantly holds that a trust for indefinite beneficiaries is not necessarily invalid solely because court supervision is thereby made difficult.[4] In the cited case the person named as "trustee" was willing to carry out the testator's general intent, and here the trustee in the exercise of his discretion has made express determinations [5] in good faith as to proper payments

4. See 48 *H.L.R.* 1162 at 1164 *et seq.*

5. They are as follows:

"a. One Hundred Dollars ($100) to Jewish Welfare Society for the purpose of sending underprivileged children to a summer camp.

b. One Hundred Dollars ($100) to the Ladies Bichor Cholem Society of Wilmington, Delaware.

c. One Hundred Dollars ($100) to United Hias Service in place of the National Refugee Service designated in paragraph 7, said National Refugee Service being no longer in existence.

d. One Hundred Dollars ($100) to the Deborah Sanatorium for consumptive patients in Brown's Mills, New Jersey.

e. One Hundred Dollars ($100) to the Delaware Chapter of the National Foundation for Infantile Paralysis, Inc.

f. One Hundred Dollars ($100) to American Joint Distribution Committee to be set aside for maintaining aged scholars."

These good faith determinations are obviously based on a conviction that the testatrix did not consider the property claimed by counterclaimant to be equitably hers. It is apparently conceded by all parties that United Hias Service is the successor to the National Refugee Service.

under Item Seventh. In my opinion such determinations where necessary meet the tests governing the identity of recipients of bequests for charitable purposes laid down in *Doughten v. Vandever*, 5 *Del.Ch.* 51 and in *McBride v. Murphy*, 14 *Del.Ch.* 242, 124 *A.* 798, *affirmed* 14 *Del.Ch.* 457, 130 *A.* 283. Compare *Equitable Security Trust Co. v. Home for Aged Women*, 35 *Del.Ch.* 553, 123 *A.2d* 117.

More than three years having elapsed since the present trustee-plaintiff assumed office, the unexpended sum of $500 set aside in paragraph (a) of Item Seventh has fallen into the balance of the purported trust here under consideration. Accordingly the validity of the trust provisions of the Feinberg will must be tested by construing that part of Item Seventh which follows paragraph (a) thereof. Despite the extremely broad language of the final paragraph of Item Seventh I am satisfied that the testatrix did not intend that her trustee should have the unbridled right to give to any institution or individual but rather to those indicated in her will.

Even were such intent not apparent, the fact is that the trustee has exercised his discretion and has made a determination as to a proper distribution of the testatrix's bounty and the amount to be paid to each institution to be so benefited. The carrying out by the trustee of these determinations will be reported on to the Court in due course and notice of the filing of such report will be given to the testatrix's next of kin. Thus the performance of trust duties will be adequately supervised. Compare *In re Thompson, supra.*

The motion of Sadie Feinberg and Morris Feinberg for summary judgment is granted. On notice an order will be entered directing the trustee to hold the bequest to Isador Feinberg as hereinabove directed and to distribute to the institutions named by plaintiff-trustee the amounts determined by him to be properly payable under Item Seventh of the will. Upon a showing that the trustee has made such payments a resulting trust of the residue of the testatrix's estate in favor of the testatrix's next of kin will be declared.